UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 107-4 |
| vs. | ) | Judge Elaine E. Bucklo |
| | ) | |
| CHARLENE BATALLA | ) | |

**FILED**
AUG 15 2008
JUDGE ELAINE E. BUCKLO
UNITED STATES DISTRICT COURT

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant CHARLENE BATALLA, and her attorney, GAL PISSETZKY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by part by Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with wire fraud, in violation of Title 18, Section 1343 (Counts Two, Three, Five, Six, Seven, Eleven, Twelve, and Fifteen).

3. Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Two of the indictment. Count Two charges defendant with devising, attempting to

devise and participating in a scheme to use a wire in interstate commerce to obtain money and property owned by and under the custody of banks and lenders, by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.

## Factual Basis

6.　Defendant will plead guilty because she is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt and constitute relevant conduct within the meaning of Guideline § 1B1.3(a)(2):

Defendant CHARLENE BATALLA admits that beginning in or about January 2003 and continuing through in or about November 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, she, together with co-defendants Lawrence Skrobot, James Robert Thomas, Varena McCloud, Hattie Brooks, Donald Thomas, Jonathon Marchetti, Joseph Green III, Joseph Miller, Alfredo Hilado, Johnny White, Diane Robinson, John Lewis, James Green, Christopher Marchetti, Karl Allen, Alonzo Braziel, and Kevin Earl, and others, knowingly devised, attempted to devise, and participated in a scheme to defraud and to obtain money and property owned by and under the custody and control of banks and lenders, including Chase Manhattan Mortgage Company, Argent Mortgage Company, LLC, BNC Mortgage Inc., People's Choice Home Loan, Inc., Encore Credit

Corp., Accredited Home Lenders, and Fremont Investment & Loan, by means of materially false and fraudulent pretenses, representations, and promises.

Defendant admits she worked as a loan processor for Equity Express, a loan brokerage company, beginning in 2001 for approximately three years until she left to work for another title company before returning to Equity Express. Defendant admits that during her time at Equity Express, she worked exclusively as a loan processor for co-defendant Varena McCloud. In her position, defendant was responsible for processing mortgage loan files, which included ordering or requesting verifications of rent ("VORs"), ordering or requesting verifications of employment ("VOEs"), ordering or requesting verifications of deposit ("VODs"), and working with the mortgage lenders to obtain the necessary documentation and information to meet the mortgage lenders' conditions for funding a mortgage loan. Defendant admits knowing that, in many instances, she and co-defendant Varena McCloud provided lenders with false VORs, VOE, VODs, leases, tenant ledgers, and employment documents to qualify a borrower for a loan to which he otherwise would not be entitled.

Defendant further admits it was part of the scheme that she and co-defendants Lawrence Skrobot, James Robert Thomas, Varena McCloud, and Joseph Miller prepared, and caused others to prepare, mortgage loan application packages on behalf of buyers of the Skrobot residences, which were fraudulent in that they contained a variety of false statements designed to induce the lenders to issue mortgage loans to buyers who were not otherwise

qualified for such loans, namely, false statements regarding the buyers' employment, income, assets and liabilities, and intention to occupy the premises.

Defendant also admits it was part of the scheme that she and co-defendants Lawrence Skrobot, James Robert Thomas, Varena McCloud, Hattie Brooks, Donald Thomas, Jonathon Marchetti, Joseph Green III, Joseph Miller, Alfredo Hilado, Johnny White, Diane Robinson, John Lewis, James Green, Christopher Marchetti, Karl Allen, Alonzo Braziel, and Kevin Earl created, and caused others to create, false W-2 Wage and Tax Statements ("W-2s"), false earnings statements, false VOEs, false VORs, and false leases to support the false statements in the loan applications regarding the buyers' employment and income; and false VODs to support the false representations in the loan applications regarding the amount of money and source of the deposits in the buyers' bank accounts. Defendant admits preparing at least 20 false VORs for co-defendants Lawrence Skrobot, James Robert Thomas, and Joseph Green III during the conspiracy. Defendant further admits accepting from co-defendant Joseph Green III false W-2 forms, where he had covered the original borrower's name with whiteout and wrote a new name over that section of the W-2. Defendant also admits having conversations with lenders, including BNC, Fremont, and People's Choice, where representatives instructed defendant to submit false documents to support the loan requests, or directed defendant to submit false loan applications. Defendant always told co-defendant Varena McCloud of these conversations.

Defendant further admits that it was part of the scheme that some fraudulent loan packages submitted to lenders misrepresented that the buyers had paid rent for properties managed by a property management company called Ezra, Inc., when in fact that company did not manage the properties at issue, and the buyers did not rent property through it. In particular, defendant admits that co-defendants Lawrence Skrobot, James Robert Thomas, and Joseph Green paid co-defendant Varena McCloud $300 for each Ezra, Inc. VOR created by defendant. Defendant also admits that she knew co-defendants Varena McCloud, Hattie Brooks, and Individual A would divide the $300 fee among themselves, and on one occasion, defendant received $100 from the fee.

Defendant further admits it was part of the scheme that co-defendants Lawrence Skrobot, James Robert Thomas, and others referred buyers to co-defendant Varena McCloud at Equity Express, so that mortgage applications could be prepared. Defendant admits that she received the personal information that co-defendant Varena McCloud had collected from potential buyers and that defendant then used the personal information to complete the paperwork for the purchases. Defendant admits that she received a $600 commission from co-defendant Varena McCloud when she closed deals with McCloud, and a $550 commission from others at Equity Express for each loan she helped close for those persons.

Batalla admits she concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme, the purposes of the scheme, and the acts done in furtherance of the scheme.

Defendant admits that as a result of her fraudulent acts, various banks and lenders issued mortgage loans to the buyers of approximately 32 properties for an amount totaling approximately $4,318,075, and incurred losses on the mortgage loans because they were not repaid by the borrowers and because at least some of the properties were abandoned or in poor condition.

More specifically, defendant admits that or about April 26, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, for the purpose of executing the above-described scheme, she knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a funds transfer in the amount of approximately $72,250 from Deutsche Bank in New York, New York, to Bank One in Chicago, Illinois, for credit to the account of First American Title Insurance Company, which funds transfer represented the proceeds of a mortgage loan issued to co-defendant James Green for the purchase of a residence located at 1418 Portland, Chicago, Illinois, in violation of Title 18, United States Code, Sections 1343 and 2.

### Maximum Statutory Penalties

7.　Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

　　a.　A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from

that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

      b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in Count Two of the indictment is 7, pursuant to Guideline §2B1.1(a)(1);

ii. Pursuant to Guideline § 2B1.1(b)(1)(I), the base offense level is increased by sixteen levels because the loss resulting from the offense of conviction and relevant conduct is more than $1,000,000 but less than $2,500,000;

iii. Defendant acknowledges the loss amounts and, therefore, the offense level and Guidelines range, may increase as additional losses are realized from the fraudulent transactions in which defendant participated;

iv. Pursuant to Guideline § 2B1.1(b)(9)(C), the base offense level is increased by two levels because the offense involved sophisticated means.

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the

8

government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.     **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.     Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

e.  Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraphs 9(b)(i) and 9(b)(iii-vi) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

f.  Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### **Cooperation**

10.  Defendant agrees she will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which she is called upon to

cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

### Agreements Relating to Sentencing

11.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the low end of the applicable guidelines range, and shall recommend a sentence of 66 percent of the low end of the applicable guidelines range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

12.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1.

Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

13. Regarding restitution, the parties acknowledge that pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution to Chase Manhattan Mortgage Company, Argent Mortgage Company, LLC, BNC Mortgage Inc., People's Choice Home Loan, Inc., Encore Credit Corp., Accredited Home Lenders, and Fremont Investment & Loan, or their successors, in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment and the forfeiture allegation as to this defendant.

### Presentence Investigation Report/Post-Sentence Supervision

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of

defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18. For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the

returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 107-4.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.   At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.   At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.   At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

b.   **Waiver of appellate and collateral rights.**   Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in

exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

    c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Other Terms

22.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23.    Defendant understands that pursuant to Title 12, United States Code, Section 1829, her conviction in this case will prohibit her from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following her conviction, the additional approval of this Court. Defendant further understands that if

she violates this prohibition, she may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

24. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25. Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27.  Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28.  Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/15/08

_____
PATRICK J. FITZGERALD
United States Attorney

_____
CHARLENE BATALLA
Defendant

_____
LISA NOLLER
MEGAN CHURCH
Assistant U.S. Attorneys

_____
GAL PISSETZKY
Attorney for Defendant

19